UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DALE BASH, KERRIE BASH,

    Plaintiffs/Counter-Defendants,

v.

Case Number 08-14967-BC
Honorable Thomas L. Ludington

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant,

PETSMART SMART CHOICES BENEFIT
PLAN,

    Defendant/Counter-Claimant.
_____/

### OPINION AND ORDER DENYING STATE FARM'S MOTION FOR DECLARATORY JUDGMENT OR SUMMARY JUDGMENT, GRANTING THE PLAN'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The primary issue raised in this declaratory judgment action is whether Defendant PetSmart Smart Choices Benefit Plan ("the Plan"), is entitled to reimbursement for medical expenses paid on behalf of Plaintiff Kerrie Bash, who sustained catastrophic injuries in an automobile accident, from a tort recovery settlement primarily based on the recovery of non-economic damages. If the Plan is entitled to reimbursement from the tort recovery settlement, the question becomes whether State Farm Mutual Automobile Insurance Company ("State Farm"), as Kerrie Bash's first-party insurer, is in turn obligated to reimburse the Estate of Kerrie Bash for those funds paid to the Plan.

Plaintiffs Kerrie Bash, and Dale Bash, as Conservator of the Estate of Kerrie Bash (collectively, "Plaintiff"), filed an amended complaint [Dkt. # 12] on April 7, 2009, seeking a declaratory judgment against State Farm, the Plan, Francesca Spinelli (the administrator of the Plan),

and PetSmart, Inc. (Kerrie Bash's former employer). The Plan filed counterclaims [Dkt. # 16] against Plaintiff for breach of contract and a declaratory judgment on May 15, 2009. On February 2, 2010, Defendants PetSmart, Inc., and Francesca Spinelli, were dismissed without prejudice pursuant to a stipulated order [Dkt. # 29].

Now before the Court are State Farm's motion for declaratory judgment or summary judgment as to Plaintiff's claims [Dkt. # 25], the Plan's motion for summary judgment on Plaintiff's claims and its counterclaims [Dkt. # 27], and Plaintiff's motion for summary judgment on Plaintiff's claims and the Plan's counterclaims [Dkt. # 33]. The Plan filed a response [Dkt. # 31] to State Farm's motion and a response [Dkt. # 36] to Plaintiff's motion. State Farm filed a response [Dkt. # 32] to the Plan's motion. No other responses or replies were filed.

The Court has reviewed the parties' submissions and finds that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, State Farm's motion for declaratory judgment or summary judgment [Dkt. # 25] will be denied, the Plan's motion for summary judgment [Dkt. # 27] will be granted, and Plaintiff's motion for summary judgment [Dkt. # 33] will be granted in part and denied in part. The Plan is entitled to reimbursement for medical expenses paid on behalf of Plaintiff and State Farm is obligated to reimburse Plaintiff for the settlement funds that must be used to pay the Plan.

I

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

II

On February 3, 2007, Kerrie Bash was catastrophically injured while a passenger in a vehicle being operated by her stepfather, Thomas Markus, MD. The injuries that Kerrie Bash suffered include a severe traumatic brain injury that required a prolonged hospitalization during which she was comatose and on a ventilator before progressing to a "minimally conscious state." Kerrie Bash also suffered a fractured neck, which ultimately required a surgical fusion. Kerrie Bash currently resides at the Riverside Rehabilitation Center for the Brain Injured in Bay City, Michigan. Kerrie Bash's injuries deprive her of any semblance of a normal life and she is unable to live independently.

At the time of the accident, Kerrie Bash was employed by PetSmart, Inc., and thereby covered by the Plan. At this juncture, the parties do not dispute that the Plan is a self-funded health

benefits ERISA plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. At all times relevant, both Kerrie Bash and Dr. Markus were Michigan residents. At the time of the accident, the vehicle Dr. Markus was operating was insured under Michigan no-fault policy number G235-507-22D, issued by State Farm. State Farm also issued Michigan no-fault insurance policy number 1057365-C16-22B to Kerrie Bash. Plaintiff reached a settlement agreement with State Farm, as Dr. Markus' insurer, for the sum of $1,100,000. Plaintiff also reached a settlement agreement for the sum of $100,000 with Erie Insurance Company, the insurer of the operator of another vehicle involved in the accident of February 3, 2007.

In a previous lawsuit in this Court, case number 07-14626, to which the parties were State Farm, the Plan, PetSmart, Inc., and Francesca Spinelli, the Court entered a declaratory judgment by consent. The consent judgment provided that the Plan was responsible for "primary coverage, as between the Plan and State Farm, for the benefits of Bash arising out of the Accident under the terms of the Plan, and State Farm shall provide coverage as the secondary/excess insurer, as between the Plan and State Farm, for the benefits of Kerrie Bash arising out of the Accident." *See State Farm Mut. Auto. Ins. Co. v. PetSmart, Inc.*, No. 07-14626 (E.D. Mich. Apr. 13, 2009) (Dkt. # 22). To date, the Plan has paid approximately $475,000 for Kerrie Bash's medical care; and the parties explain that the Plan is not anticipated to have future coverage obligations.

The Plan provisions now at issue in this case provide as follows:

**ARTICLE NINE**
**SUBROGATION**

**9.1 Benefits Conditioned on Plan's Right of Subrogation/Reimbursement**.   The provision of benefits under the Plain is subject to the Plan's right to subrogation/reimbursement as set forth in this Article. By electing to participate in the Plan and receiving benefits that are conditioned on the Plan's right to subrogation/reimbursement,

Covered Persons agree to abide by the terms and conditions of the Plan in general and this Article in particular.

**9.2 <u>Plan's Right to Subrogation/Reimbursement</u>**. If a Covered Person is injured or becomes ill as a result of or in connection with the act or omission of a third party ("Third Party Act Injury or Illness"), any benefits provided under the Plan to the Covered Person for the Third Part Act Injury or Illness are conditioned on the Plan's right to subrogation/reimbursement. The Plan's right to subrogation/reimbursement applies to any and all amounts recovered ("Recovery Amount") by the Covered Person (whether by settlement, court order, judgment, or otherwise, and whether or not actually collected) or the Plan (if the Plan elects to exercise its right to pursue recovery directly) from the third party, the third party's personal representative, the third party's insurance carrier(s), or any other source (collectively, "Third Party") for the act or omission of the third party. The Plan's right to subrogation/reimbursement is a right of first recovery from the Recovery Amount, and the Subrogation Amount shall be paid from the Recovery Amount without regard to whether Covered Person will be made whole by the Recovery Amount.

**9.3 <u>Subrogation Amount</u>**. The amount to which the Plan has a right to subrogation/reimbursement ("Subrogation Amount") is the lesser of (a) the value of the benefits that have been (and will be) provided under the Plan for the Third Party Act Injury or Illness, or (b) the Recovery Amount minus the amount of reasonable attorneys' fees and costs incurred by the Covered Person in obtaining the Recovery Amount. The value of the benefits provided shall be conclusively presumed to be the cost to the Plan of providing the benefits.

**9.4 <u>Covered Person's Obligations</u>**. If represented by an attorney, the Covered Person will instruct his/her attorney to pay the Plan, out of the Recovery Amount, the Subrogation Amount. If not represented by an attorney, the Covered Person will make such payment directly to the Plan or instruct the Third Party to make such payment to the Plan. If a Covered Person or an individual who collects from a Third Party on behalf of a Covered Persons does not reimburse the Plan as required, such failure may be treated as a breach of contract and the Plan may pursue all remedies available to it.

If the Administrator, in its sole discretion, determines that it should pursue recovery directly against the Third Party to preserve or further its subrogation rights under this Article, the Administrator may require that the Covered Person execute any documentation necessary or useful for the Administrator to pursue recovery directly against the Third Party. The Covered Person will execute any such requested documentation and will cooperate fully to assist the Administrator in pursuing the recovery. If a Covered Person refuses to sign any requested documentation, the claimed benefits will be deemed excluded from coverage and will not be paid. If any such benefits are inadvertently paid by the Plan, future benefit may be reduced until the excess amount has been repaid to the Plan.

Plan Br. Ex. B-1 (p. 8).

III

The first question is whether the Plan is entitled to reimbursement for medical expenses paid on behalf of Plaintiff from settlement proceeds that are composed primarily of compensation for Plaintiff's non-economic injuries. The second question presented is whether State Farm is obligated to reimburse Plaintiff for any funds required to be paid to the Plan. Both questions will be answered in the affirmative.

A

Section 502(a)(3) of ERISA empowers a plan fiduciary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii). The parties do not dispute the applicability of this section of ERISA as the statutory authorization for the Plan's claim to enforce its reimbursement provisions. *See also Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006). The parties also do not dispute that ERISA's "preemption" clause provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and [are] not exempt under section 4(b) [29 U.S.C. § 1003(b)]." 29 U.S.C. § 1144(a). Likewise, it is undisputed that "federal common law rules of contract interpretation" apply to ERISA plans. *Univ. Hosps. of Cleveland v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006) (quotation omitted). However, "[a] primary purpose of ERISA is to ensure the integrity and primacy of the written plans. Thus, the plain language of an ERISA plan should be given its literal and natural meaning." *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997). Federal common law simply "fills the gaps." *Id.*

To determine the correct interpretation of a plan, a court considers "both the policy language and the intent underlying the provision." *Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network*, 449 F.3d 688, 692 (6th Cir. 2006) (citing inter alia *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 112-13 (1989)). *See id.* at 693 ("[T]he Court's paramount responsibility in construing plan language is to ascertain and effectuate the underlying intent.") (quotation omitted). "A technical construction of a policy's language which would defeat a reasonable expectation of coverage is not favored." *Id.* at 692. "[A]n insurer has a duty to express clearly the limitations in its policy; any ambiguity will be construed liberally in favor of the insured and strictly against the insurer." *Id.* (quotations omitted). "[L]anguage is ambiguous if it is subject to two reasonable interpretations." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994).

The Plan contends that under its terms Plaintiff is obligated to reimburse it for medical expenses paid on Kerrie Bash's behalf, out of the $1.2 million recovered through tort settlements with State Farm and Erie. The Plan asserts that § 9.2 of the Plan establishes its right to obtain reimbursement from any third party tort recovery arising from the same accident. As noted above, it provides:

> If a Covered Person is injured or becomes ill as a result of or in connection with the act or omission of a third party ("Third Party Act Injury or Illness"), any benefits provided under the Plan to the Covered Person for the Third Party Act Injury or Illness are conditioned on the Plan's right to subrogation/reimbursement.

Plan § 9.2. All of the parties recognize that "[w]hile subrogation and reimbursement may have similar effects, they are distinct doctrines." *Unisys Med. Plan v. Timm*, 98 F.3d 971, 973 (6th Cir. 1996). "Unlike subrogation, which arises under state law and allows the insurer to stand in the shoes

-7-

of its insured, reimbursement is a contractual right governed by ERISA and comes into play only after a plan member has received personal injury compensation." *Id.*

The Plan highlights that although Article Nine of the Plan is entitled "subrogation," § 1.2 provides that "[h]eadings and subheadings are for the purpose of reference only and are not to be considered in the construction of this Plan." The Plan asserts that § 9.2 refers to "subrogation/reimbursement," which indicates that both remedies are available. *See, e.g.*, Random House College Dictionary, rev. ed. (1975) (defining virgule as "an oblique stroke (/) used between two words to show that an appropriate one may be chosen to complete the sense of the text.").

More importantly from the Plan's perspective, § 9.2 expressly provides that the Plan's "right to subrogation/reimbursement applies to any and all amounts recovered . . . by the Covered Person . . . or the Plan . . . from the third party." The Plan asserts that the reference allowing the Plan to receive "amounts recovered . . . by the Covered Person," applies to reimbursement and that the reference to "amounts recovered . . . by the Plan" applies to subrogation. In addition, the Plan contends that § 9.4, which describes the Covered Person's obligation to pay the Plan, necessarily recognizes a distinct reimbursement right because the Covered Person would not ever be in a position to pay anything to the Plan if the Plan were itself pursuing a remedy through subrogation.

Finally, the Plan argues that the Summary Plan Description ("SPD") confirms that the Plan is entitled to reimbursement:

> **Am I Required to Reimburse the Plan if I Am Inured By a Third Party?** If you are injured or become ill as a result of a third party's act or omission, as a condition of receiving treatment covered by the Plan for such injury or illness you are agreeing to:
> - repay the Plan any amounts recovered (whether by settlement, court order or otherwise) from the third party, the third party's personal representative or the third party's insurance carrier(s) on account of your injury or illness.

Plan Br. Ex. B-2 (p. 79). The Plan incorporates the Summary Plan Description by reference: "The SmartChoices SPD . . . shall form a part of this Plan in the same manner as if all the terms and provisions thereof were included herein." *Id.* (p. 1).

The Plan relies primarily on *Ward v. Wal-Mart Stores, Inc. Assoc.'s Health & Welfare Plan*, 194 F.3d 1315 (table), 1999 WL 801532 (6th Cir. 1999). In *Ward*, the plaintiff's no-fault automobile insurance had expired and her employee benefits plan paid her medical expenses arising from an automobile accident. 1999 WL 801532, at *1. The plaintiff filed a negligence suit against the third-party tortfeasor, resulting in a monetary settlement for non-economic damages. *Id.* (noting that the recovery was necessarily for non-economic damages because the Michigan No-Fault Act "bars recovery for medical expenses from third-party tortfeasors").

The court of appeals noted that the district court had determined that subrogation was not appropriate because "the Plan limited subrogation to recoveries from 'any third party who may be liable for such benefits.' Because the [third party] was not liable for medical expenses under Michigan law, it did not meet the Plan's definition of a 'third party who may be liable for benefits.'" *Id.* at *1 n.2. In contrast, with respect to reimbursement, "the Plan provided that it had the right to recover benefits paid from a judgment or settlement 'regardless of whether the payment is designated as payment for such damages including, but not limited, to pain and/or suffering, loss of income, medical benefits or any other specified damages; or any other damages." *Id.*

Ultimately, the question that *Ward* presented was whether the plan's right to reimbursement was properly reduced "by a pro rata share of the costs and attorneys' fees . . . expended by the [plaintiff] to obtain the settlement." *Id.* at *1. The plaintiff argued that the plan did not "unambiguously specify the extent of reimbursement," while the plan argued that "the language of

the Plan clearly states that it is entitled to full reimbursement." *Id.* at *3. The court of appeals found that "[t]he language of the Plan does not limit or restrict its right to full reimbursement in any manner" when it provided as follows:

> The PLAN shall have the right to reduce benefits otherwise payable by the PLAN or recover benefits previously paid by the PLAN *to the extent of any and all* of the following:
>
> A. *Any payment resulting from a judgment or settlement*, or other payment or payments made or to be made by any person or persons considered responsible for the condition giving rise to the medical expense-or by their insurers, regardless of whether the payment is designated as payment for such damages including, but not limited, to pain and/or suffering, loss of income, medical benefits or any other specified damages; or any other damages made or to be made by any person.

*Id.* at *4 (emphasis in opinion). The court acknowledged that "it would have been preferable for the Plan to state specifically that it does not permit a deduction in reimbursement amounts for attorneys' fees," but emphasized that "when a plan is clear and unambiguous, we cannot apply a common-law rule of interpretation, but . . . must give the plain language of a plan its natural meaning." *Id.*

The Plan insists that it need not specifically itemize non-economic damages that are reimbursable in order to reserve a reimbursement right superior to what the Plan could recover directly through subrogation under Michigan no-fault law. The Plan asserts that even if the subrogation remedy is limited by Michigan law, it does not follow that the reimbursement remedy is limited in the same manner, particularly given the fact that it is undisputed that subrogation and reimbursement are "distinct doctrines." The Plan further argues that there is no limit on either the subrogation or reimbursement remedy based on the language of the Plan that "[t]he Plan's right to subrogation/reimbursement applies to any and all amounts recovered ("Recovery Amount") by the Covered Person (whether by settlement, court order, judgment, or otherwise, and whether or not

actually collected)." The Plan maintains that " 'all' means *all* – including tort damages of *any* description."

On the other hand, Plaintiff and State Farm contend that because Plaintiff, with some minor exceptions, cannot recover medical expenses from third parties under Michigan no-fault law, the Plan cannot seek reimbursement for medical expenses from the tort settlement funds, composed primarily of compensation for non-economic injuries. Under Michigan no-fault law, "tort liability arising from the . . . use . . . of a motor vehicle . . . is abolished" with limited exceptions. Mich. Comp. Laws § 500.3135(3). For example, "[a] person remains subject to tort liability for noneconomic loss caused by his or her . . . use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." *Id.* § 500.3135(1). Only certain very limited economic damages can be recovered. *See id.* § 500.3135(3)(c)–(e).

Plaintiff and State Farm suggest that the reimbursement provisions of the Plan do not clearly provide that Plaintiff is required to reimburse the Plan for medical expenses when the Plan does not expressly provide that the Plan is entitled to be reimbursed for expenses that it could not directly recover through a suit of its own under Michigan law. They argue that the Plan's reimbursement rights are no greater than the Plan's subrogation rights, which they assert are necessarily limited by Michigan no-fault law. They note that the Plan always uses the words "subrogation" and "reimbursement" together, or only "subrogation"; and reimbursement is never independently referenced. They also note that the Plan refers to the "subrogation/reimbursement" right in the singular, and not to "rights," suggesting that the remedies are identical in practical effect. Plaintiff and State Farm suggest that the only difference is that the reimbursement remedy simply protect's

the Plan's right to recover when the injured person files a third-party case, rather than the Plan filing such a suit under its right of subrogation.

Furthermore, Plaintiff and State Farm emphasize that Article Nine of the Plan does not refer to any type of non-economic damages, unlike the plan at issue in *Ward*. For reimbursement rights to exceed subrogation rights, they effectively assert that the Plan would require an express statement to that effect. In addition to *Ward*, Plaintiff and State Farm also seek to distinguish the case of *Glover v. Nationwide Mut. Fire Ins. Co.*, - - - F. Supp. 2d - - - -, 2009 WL 3644716 (W.D. Mich. 2009), wherein the court found that the language of the plan at issue was not ambiguous and that the plan had a right to reimbursement of medical expenses from a tort recovery. The court noted that the plan provided that "if a third party causes a sickness or injury for which the participant receives a settlement, judgment, or other recovery, the participant 'must use those proceeds to fully return to the Plan 100% of any benefits you received for that Sickness or Injury.' " 2009 WL 3644716, at *7. The court recognized that the reimbursement would necessarily be paid from a settlement compensating the participant only for her non-economic injuries. *Id.*

Under those circumstances, the court noted that avoidance of the "make whole" doctrine requires that an ERISA plan include "language conclusively disavowing the rule's application to the plan." *Id.* The rule itself is simply a default rule of construction "that an insurer cannot enforce its own subrogation [or reimbursement] rights unless and until the insured has been made whole by any recovery." *Id.* (quoting *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000)). Finding that the "make whole" doctrine was inapplicable to the case before it, the court relied on the following provisions in the summary plan description ("SPD"):

> The SPD provides that the Plan "has a first priority right to receive payment on any claim against a third party, before you receive payment from that third party." It further states that

the Plan's reimbursement rights "apply to full and partial settlements, judgments, or other recoveries paid or payable to you or your representative, no matter how those proceeds are captioned or characterized." Relevant to the present case, the SPD states that payments include "economic, non-economic, and punitive damages." And, to remove all doubt, the SPD provides that the Plan may enforce its reimbursement rights "regardless of whether you have been 'made whole' (fully compensated for your injuries and damages)."

*Id.* at *8 (citations omitted).

Significantly, the court also rejected the argument that "the reimbursement clause requiring a participant to reimburse a plan for medical expenses out of the participant's tort recovery for non-economic loss 'indirectly violates Michigan public policy' in favor of fully compensating injured victims" as expressed in the Michigan No-Fault Act, Mich. Comp. Laws § 500.3135. *Id.* (citation omitted). The court explained that "Michigan law . . . does not govern the validity of self-funded ERISA plans" due to preemption. *Id.* (citations omitted).

Finally, Plaintiff and State Farm note that the Plan refers only to a "Subrogation Amount," and not a separate reimbursement amount. Nonetheless, the "Subrogation Amount," is not confined to funds recoverable only through subrogation when it is defined as "[t]he amount to which the Plan has a right to subrogation/reimbursement." Plan § 9.3. The amount is either the "value of the benefits" provided under the Plan, or the full amount recovered by the participant minus attorney fees and costs incurred to obtain the recovery, whichever is less. *Id.*

The Plan's arguments that it is entitled to full reimbursement from the tort settlements are persuasive, particularly given the Summary Plan Description, which states unequivocally that: "If you are injured . . . as a result of a third party's act or omission, as a condition of receiving treatment covered by the Plan . . . you are agreeing to repay the Plan any amounts recovered (whether by settlement, court order or otherwise) from the third party." Like in *Ward*, it may have been "preferable for the Plan to state specifically that it does not permit a deduction in reimbursement

amounts" based on limitations applicable to the subrogation remedy based on state law, the plain language of the Plan is not ambiguous. Thus, the Plan is entitled to reimbursement from the settlement proceeds recovered by Plaintiff.

B

Next, Plaintiff argues that State Farm is required to reimburse Plaintiff for the settlement funds that Plaintiff is required to pay to the Plan to reimburse the Plan for medical expenses. Plaintiff relies primarily on *Shields v. Gov't Employees Hosp. Ass'n, Inc.*, 450 F.3d 643 (6th Cir. 2006), overruled in part on other grounds by *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). Briefly, in *Shields*, the plaintiff, who was injured in an automobile accident, was covered by her mother's no-fault automobile insurance policy with State Farm and her mother's employee benefits plan with the defendant ("GEHA"). 450 F.3d at 645. GEHA paid over $160,000 in medical expenses on the plaintiff's behalf, and the plaintiff sought to require State Farm to reimburse GEHA on her behalf when GEHA was entitled to reimbursement from the damages for pain and suffering that the plaintiff recovered in a tort action. *Id.* In granting the plaintiff the requested relief, the court explained as follows:

> In this case, the insured received payment to cover medical expenses, that pursuant to federal law, she is required to repay from the proceeds of her tort recovery for pain and suffering damages. Because federal law preempts state law, Michigan cannot stop GEHA from requiring reimbursement. Consequently, here, as in *Sibley* [*v. Detroit Auto. Inter-Ins.Exch.*, 427 N.W.2d 528 (Mich. 1988)], the insured is being forced to pay her own medical expenses out of her tort damages for pain and suffering. This contravenes the expressed intent of the Michigan legislature as embodied in [the Michigan No-Fault Insurance Act], which requires all car owners to maintain insurance coverage for medical expenses and prohibits no-fault insurers from seeking reimbursement from tort settlements. Mich. Comp. Laws §§ 3101, 3116. Furthermore, the Michigan legislature mandated coordinated benefits plans to avoid duplicative coverage, not to deny insured persons coverage altogether. *See Smith* [*v. Physicians Health Plan, Inc.*], 514 N.W.2d [150,] 154 ([Mich.] 1994). Here the coverage is not duplicative because Plaintiff's tort damages are for pain and suffering and State Farm is covering Plaintiff's medical expenses. Thus, the fact that the State Farm Policy is

coordinated with GEHA's policy is irrelevant. The insured maintains an insurance policy for medical expenses and should not be required to pay her medical expenses without help from her insurance carrier.

*Id.* at 648.

Significantly, State Farm did not respond to Plaintiff's motion for summary judgment, nor did it address the issue in its own motion for summary judgment. Based on the legal authority advanced by Plaintiff, Plaintiff is entitled to reimbursement from State Farm for the settlement funds that Plaintiff is required to use to reimburse the Plan for medical expenses.

IV

Accordingly, it is **ORDERED** that State Farm's motion for declaratory judgment or summary judgment [Dkt. # 25] is **DENIED**, that the Plan's motion for summary judgment [Dkt. # 27] is **GRANTED**, and Plaintiff's motion for summary judgment [Dkt. # 33] is **GRANTED IN PART** and **DENIED IN PART**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 23, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 23, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS